UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    Plaintiff,

                                          SENTENCING MEMORANDUM
    -against-                              24-CR-101 (AMN)

ANTHONY LUIZZI,

                    Defendant.

## ANTHONY LUIZZI'S SENTENCING MEMORANDUM

      Anthony Luizzi, by and through his counsel, hereby files his sentencing memorandum and respectfully requests that the Court impose a sentence of 180 months.  180 months is the mandatory minimum sentence allowed in this case and is in and of itself a substantial and harsh sentence. There should be no question that this is all that is necessary to achieve the purposes of sentencing.

      The Probation Department has calculated an advisory range of 270 to 322 months.  We do not agree with that range and calculation.  The Government has requested that the Court impose a sentence of 280 months, to be followed by 5 years of supervised release.  We do not agree with that "recommendation".  It should be noted that at the time of the plea, the Government "estimated" the guideline range as 211 – 248 (151 – 188 months plus 60 months).  There is absolutely nothing that changed between the time of the plea and the time of pre-sentence investigation report.  Mr. Luizzi's criminal history remained the same and the factors, as known by all parties, remained the same.

      Mr. Luizzi believes that his criminal history category is overstated and should be adjusted to a level II.  Mr. Luizzi only has two prior misdemeanor convictions, as well as a conviction for Driving While Ability Impaired, a violation.  While Mr. Luizzi understands that the Court may score the violation for Driving While Ability Impaired, it should be noted that this is the equivalent of a traffic infraction and is not a criminal conviction.  Regardless, the crimes that Mr. Luizzi

committed were relatively minor and categorizing Mr. Luizzi as a "criminal history category III" overstates his criminal history. As such, Mr. Luizzi requests that this court lower his criminal history level to criminal history category II.

Additionally, Mr. Luizzi believes that the guideline range is not a reasonable measure of his culpability in this case. In the first instance, the plea agreement calculates a base offense level of 36 for an offense that involved "at least 30,000 kilograms but less than 90,000 kilograms of Converted Drug Weight". This "converted drug weight" only exists in the Guidelines world. Any substance or mixture containing any detectable amount of fentanyl, no matter how infinitesimal, can be considered fentanyl for charging purposes, even if 99% or more of its composition might be some other substance, controlled or otherwise. In this case, the Government chose to charge this as fentanyl, regardless of the actual detectable amount of fentanyl in the pills.

Mr. Luizzi is seeking a four-level reduction, as well as an overall downward departure, because he was a minimal participant in this case. He was a low level "dealer" who basically sold minimal amounts to support his habit. He lived in an apartment that his parents paid for and drove a car that was owned and registered to his parents. In short, he had little to no money of his own. There was no lavish lifestyle that often accompanies substantial trafficking in narcotics.

With respect to the pills that were located in his residence, Mr. Luizzi had little discretion and no proprietary interest in them. That is, the drugs that were seized at his residence were not his. Mr. Luizzi had no authority over others and he certainly did not control others. He played a minimal role in this case.

Three decades ago, Judge Martin in the Southern District of New York, had already emerged as a skeptic of the war on drugs, and sensed what would be proven true in the ensuing years, time and again:

> Increasing the mandatory minimum sentences to today's levels has obviously not had any impact on the sale and distribution of narcotics in this country……More often than not, the poor and uneducated, like Pedro Lara and his co-defendants, are made to pay the price for Congress' frustration at the inability of our law enforcement agencies to stem the rampant distribution of illegal drugs. Sending street-level drug dealers like Pedro Lara to jail for ten years will have no impact on the drug problem in this country. It does, however, reflect poorly on our system of justice.

*United States v. Genao*, 831 F. Supp. 246, 254 (S.D.N.Y. 1993). Mr. Luizzi's case again speaks to the wisdom of Judge Martin's observations. The demand for drugs continues unabated, irrespective of whatever sentence Mr. Luizzi will receive.

Regardless, to sentence a twenty-four year to a sentence that equates to almost the amount of time he has spent on this earth, does not serve the purposes of sentencing.

## I. Introduction

Anthony Luizzi, Jr., was born on March 17, 2000, to the marital union of Anthony Henry Luizzi, Sr., and Tara Luizzi (now Tara Riggs). At age eight (8), Mr. Luizzi's parents separated and Mr. Luizzi was torn between two separate households. At age ten (10), Mr. Luizzi started working for the family business (Luizzi paving). At age seventeen (17), while in the 11th grade at Colonie High School, Mr. Luizzi was forced to leave school because his father mandated that he work in the family business instead of going to school. It should be noted that while incarcerated, Mr. Luizzi successfully finished his GED programming and has passed his GED test. As such, he now has a GED.

Mr. Luizzi spoke with probation about the fact that he has a long history of substance abuse and that it was the substance abuse issues that ultimately led him down the path that has resulted in the charges at issue in this case. Mr. Luizzi admitted his role in the possession and distribution of narcotics. He admitted having firearms. And he admitted being part of a "conspiracy" to distribute controlled substances.

Mr. Luizzi has accepted his responsibility in the matter and is asking that this Court impose a sentence that is sufficient, but not greater than necessary, to fulfill all the statutory requirements of sentencing.

The Presentence Report (PSR) further sets forth additional details of Mr. Luizzi's family and employment.

## II.    Plea Agreement

On March 18, 2024, pursuant to a written plea agreement, Mr. Luizzi pled guilty to Counts 1, 2 and 3 of a three-count Information, charging Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, Methamphetamine, and Cocaine, Possession with Intent to Distribute Fentanyl, Methamphetamine, and Cocaine, as well as Possession of Firearms in Furtherance of Drug Trafficking Crimes. Mr. Luizzi admitted that between January 1, 2023, and May 23, 2023, in Albany and Saratoga Counties, he was involved in the distribution of controlled substances and that he possessed several firearms.

## III.    Guidelines

### A. Mr. Luizzi's minimal role in the offense justifies a four-level reduction in the offense

The PSR does not even address Mr. Luizzi's role as a "minor participant" in the offense under U.S.S.G. §3B1.2(b). There should be no question that Mr. Luizzi is not as culpable as his co-conspirators, and it is respectfully submitted that he was actually a "minimal participant" under the guidelines found in U.S.S.G. §3B1.2(a). U.S.S.G. §3B1.2(a) provides for a four-level decrease in the offense level for an individual who was a "minimal participant" in the criminal activity. The application notes make clear that this subsection is intended to cover "defendants who are plainly among the least culpable of those involved in the conduct of a group" and notes that a defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the

4

activities of others is indicative of a role as a minimal participant." U.S.S.G. §3B1.2(a) app. note 4. The facts of this case make it very clear that Mr. Luizzi was a minimal participant.

In this case there are three co-defendants, all with varying degrees of participation, planning, and culpability. There is no question about the leader of this group. Mr. Luizzi was merely a pawn for the other individuals to isolate themselves from additional culpability. He was their storage center.

Mr. Luizzi is the lowest on the totem-pole here and was an individual who was told what to do and what to keep in his apartment. Mr. Luizzi did not get money from the other co-conspirators and never had much money on hand. His lack of money is consistent with his minimal role in the offense. Mr. Luizzi is exactly the person this role adjustment was intended to apply to. The application notes provide for a "fact-based determination" based on a totality of the circumstances standard. U.S.S.G. §3B1.2(a) note 3(C). A non-exhaustive list of factors include:

i. the degree to which the defendant understood the scope and structure of the criminal activity;
ii. the degree to which the defendant participated in planning or organizing the criminal activity;
iii. the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority
iv. the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
v. the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

The notes provide a useful illustration in applying these factors, noting that the adjustment applies when a "defendant does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks." Mr. Luizzi had no proprietary interest in the criminal activity. He was not even paid to store the drugs in his residence. He was told what to do without benefitting from the amount of money being made by others.

A defendant seeking a role adjustment under §3B1.2(a) must prove his or her reduced culpability by a preponderance of the evidence. *See United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir. 1993). Here, Mr. Luizzi can prove by a preponderance that he was only a minimal participant. First, there was more than one participant. There are three named co-defendants and several unnamed and unknown co-conspirators. See §3B1.2(a), Note 2. Second, he fits the definition of a minimal participant. His conduct is such that he acted as a "storer" of narcotics and a pawn to be used by the others.

The totality of the circumstances, as outlined in the five factors, support a finding that he was a minimal participant. He knew very little about the scope and structure of the trafficking organization. He didn't know any of the sources of the "product", he wasn't privy to any conversations between others and their sources, and there is no indication that he was responsible for securing any of the product.  He did not have any authority or influence, as he was the low man on the totem pole.

With Mr. Luizzi's incredibly limited knowledge surrounding the operation and the other co-conspirators, his limited role in the offense, his lack of any authority, and lack of involvement regarding planning, it is clear that he is a minimal participant as is contemplated by the guidelines, and worthy of the four-level reduction.  Alternatively, Mr. Luizzi would accept a two-level reduction.

**B. Guidelines Calculation**

The Presentence Report Guidelines calculation results in a recommendation that defendant be at a Level 39, Criminal History Category III, with an aggregate imprisonment range of 270 to 322 months.

As noted above, Mr. Luizzi objects to the inclusion of two levels for "maintaining a premise for the purpose of manufacturing or distributing a controlled substance". Mr. Luizzi resided at his residence and did not primarily or principally use the premises for the purpose of manufacturing or distributing a controlled substance. There is no proof before the Court as to when the narcotics arrived at the residence or that they were there for any significant period of time. Also, the probation department adds that Mr. Luizzi maintained access to a second apartment and that Mr. Luizzi possessed a safe. This could not be further from the truth. Mr. Luizzi did not possess a safe in a separate apartment and he did not maintain the premises on Western Avenue. Mr. Luizzi did not own or rent this apartment and did not control access to, or activities at, the premises. In short, this 2 level enhancement does not apply in this case.

Mr. Luizzi also respectfully submits that his criminal history is overstated and that this Court should consider him a Criminal History Category II. If the Court were to grant defendant's motion for a four-level reduction for being a minimal participant, the base offense level would be at a 31. If the Court were to not count the maintaining the premises enhancement (that neither the Government nor the defense contemplated at the time of the plea), the base offense level would be at a 29. With an attendant criminal history category of II, the proposed guidelines range would be 97 – 121 months. It is respectfully submitted that this is a range that better suits the conduct in this case. Additionally, the waiver of appeal is at 120 months, so it is a level that appears to have been contemplated by all parties.

7

**A.    Downward Departure Motions by Government**

The Government has moved for a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and for a one-level downward adjustment for timely notification of his intention to plea guilty pursuant to U.S.S.G. § 3 E1.1(b).

**B.    Departure for Extraordinary Circumstances Not Adequately Taken into Account by Guidelines - §5K2.0**

In this case, there exists mitigating circumstances of a kind, and to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. 18 U.S.C.A. § 3553.

A.  <u>**Minimal Role**</u> -

Mr. Luizzi is requesting a downward departure for his minimal role.  The bags of narcotics found at Mr. Luizzi's apartment were not his and he did not have any possessory interest in these narcotics.  They were stored there by others and Mr. Luizzi was well aware of the fact that he did not have the ability to dispose of them as he saw fit.

B.  <u>**Addiction:**</u>

Mr. Luizzi's drug use commenced at the age of 10 years old when he began experimenting with pills.  Mr. Luizzi started to use alcohol around the age of 11 years old and started his prescription addiction to, among other things, Xanax around the age of 13 years old.  At the mere age of fourteen, he was placed in a youth drug court program.  He attended outpatient treatment, but continued to use drugs.  Given the fact that Mr. Luizzi's current conduct was fueled, in part, by his almost lifelong addictions, it is a relevant factor for this Court to consider.  The guidelines do not adequately account for this factor.

E.      **Non-Guidelines Sentence – Alternative to § 5K2.0**

1.      **Law**

If the Court does not grant our downward departure motion, we move for a *Booker*, non-guidelines sentence of 180 months.  The Second Circuit in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005) specifically authorized the district court to impose a non-guidelines sentence, even in cases where a sentencing guidelines downward departure would not ordinarily be warranted. The court stated as follows:

> "…the sentencing judge should decide, after considering all
> the other factors set forth in section 3553 (a), whether (i) to
> impose the sentence that would have been imposed under the
> Guidelines, *i.e.*, a sentence within the applicable Guidelines
> range or within permissible departure authority, or (ii) to
> impose a non-Guidelines sentence." *Id.* at 113.

In *United States v. Jones*, 460 F.3d 191 (2d Cir. 2006), the district court imposed a non-guidelines sentence of 15 months rather than the guidelines sentence of 30-37 months. The Second Circuit in affirming the sentence rejected the Government's argument that the district court had erroneously relied upon factors such as the defendant's "…education, emotional condition, favorable employment record, family support, and good record on state probation [because] the Sentencing Commission has concluded [such factors] are 'ordinarily' not relevant 'in determining whether a departure is warranted.'" *Id.* at 194. The Second Circuit responded to this argument as follows:

> "By citing the Guidelines' departure standards, however,
> the Government fails to appreciate that Jones's post-*Booker*
> sentence is not a Guidelines departure; it is a non-Guidelines
> sentence. See *Crosby*, 397 F.3d at 111 n. 9. With the entire
> Guidelines scheme rendered advisory by the Supreme Court's
> decision in *Booker*, the Guidelines limitations on the use of
> factors to permit departures are no more binding on sentencing
> judges than the calculated Guidelines ranges themselves." *Id.*

9

The *Jones* court went on to hold, as follows:

> *"Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553 (a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances.* That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness…We decline to impose a requirement for such specific articulation of the exact number of months of an imposed sentence. Selection of an appropriate amount of punishment inevitably involves some degree of subjectivity that often cannot be precisely explained …*Judge Larimer's reasons for the non-Guidelines sentence he imposed, even if not 'ordinarily' grounds for a pre-Booker guidelines departure and even though influenced in part by his subjective assessment of the Defendant, are adequate to support his conclusions that a post-Booker non-Guidelines sentence was appropriate for Eric Jones, and they suffice to satisfy the statutory requirement to state 'the reasons for [the court's] imposition of the particular sentence.'"* (emphasis added). *Id.* at 195.

> *See also*, *United States v. Castillo*, 460 F.3d 337, 356 (2d Cir. 2006) (reaffirming *Jones'* holding that "a district court may consider 'the judge's own sense of what is a fair and just sentence under all the circumstances.'")

After considering all the factors that the Court must consider, it is respectfully submitted that a sentence of 180 months would satisfy all the factors under §§ 3553(a)(1)-(7).

Mr. Luizzi is asking that the Court impose a sentence of 180 months because it is a sentence that is sufficient to comply with the purposes set forth in paragraph (2) of 18 U.S.C.A. § 3553. However, before getting to paragraph 2 of this subsection, the Court shall also consider (1) the nature and circumstances of the offense and the history and characteristics of Mr. Luizzi.

**2. Section 3553 (a) (2) Factors**

An analysis of all the factors the court must consider compels the conclusion that a sentence of 180 months would satisfy all the factors under §§3553 (a)(1)- (a)(3) and (a)(6)-(a)(7).  That is, if the Court does not agree with the objections to the calculation of the base offense level, as well as the argument that his criminal history category overstates his actual criminal history, then Mr. Luizzi argues that this case is appropriate for a non-guidelines sentence in view of Mr. Luizzi's minimal role in this case, as well as the fact that his addiction fueled his actions.  A non-guidelines sentence of 180 months is entirely reasonable under all these circumstances, given that he is only twenty-four (24) years old and that this is a significant period of incarceration.

Mr. Luizzi asks the Court to consider our analysis of the following four sentencing factors as they apply to this case. In so doing, we believe the court will conclude that a sentence of 180 months is more than sufficient to comply with the four purposes of sentencing under §3553 (a) (2).

**a. (a)(2)(A) -  The Seriousness of the Offense, Respect for the Law and Just Punishment**

Mr. Luizzi admits that he has been convicted of serious crimes, but there is nothing to suggest that the imposition of 180 months, to be followed by a period of supervised release, makes this any less serious or undermines respect for the law and just punishment. At age twenty-four (24), the Court will be imposing a sentence almost as long as he has been on this earth.  The world as he knows it will be so dramatically different in fifteen (15) years and he will have lost, arguably, the best years of his life.

There is nothing about a sentence of 180 months that would diminish respect for the law.  In addition, it is respectfully submitted that a sentence of 180 months is more than just punishment.

11

**b. (a)(2)(B) - General Deterrence**

A sentence of 180 months, to be followed by supervised release, is likely to be adequate punishment to promote deterrence of future criminal conduct for the type of offenses charged herein.  A sentence of 180 months, to be followed by supervised release, is not a slap on the wrist.  Indeed, it is years above what a defendant would receive if this case were to be prosecuted in the New York State Courts.  Even the mandatory minimum is an extremely harsh punishment.

**c. (a)(2)(C) - Protection of the Public**

It is respectfully submitted that a sentence of more than fifteen (15) years (a/k/a 180 months) is not necessary to protect the public from Mr. Lizzi.  Mr. Luizzi is not a threat to the public.

**d. (a)(2)(D) – Need for Education, Training, Medical Care, et al.**

This factor is not relevant to this case.

**F.     <u>CONCLUSION</u>**

Mr. Luizzi is contesting the calculations made by probation, he is objecting to the fact that there was absolutely nothing positive put in his Pre-Sentence Investigation Report (it is hard to even fathom how that report can be viewed as being neutral) and he objects to the inclusion of extraneous facts that have nothing to do with him.  Also, it appears that probation went to great lengths to attempt to increase the base offense level.

Mr. Luizzi is asking that the Court consider the objections to the calculations and to the overstatement of his criminal history.  Mr. Luizzi is requesting a downward departure, or in the alternative, a non-guideline sentence.  Mr. Luizzi understands that he was living a life that was not ideal and he has significantly let many of his family members down.  He was in the depths of addition and just could not find his way out.  Mr. Luizzi

was not living a flashy life, he was not selling large amounts of narcotics and making huge amounts of money.  He was living in an apartment paid for by his parents and he was driving a car owned by his parents.

Mr. Luizzi is not asking for a conditional discharge or the mere imposition of a fine.  Rather, he is requesting that the Court impose a sentence of fifteen (15) years, to be followed by supervised release.  There should be no question that such a harsh sentence is "sufficient" to fulfill all the statutory requirements of sentencing.

Dated:  September 23, 2024

Respectfully submitted,

s/_____*Danielle Neroni*
Danielle Neroni
Bar Roll No.:  513736
*Attorney for Defendant*
668 Madison Avenue
Albany, New York 12208
(518) 366-6933 / (518) 453-0173